UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
MARIBEL ANTONETTI,                            NOT FOR PUBLICATION

                    *Plaintiff*,
                                              **MEMORANDUM AND ORDER**
          v.
                                              19-cv-1396(KAM)
COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

                    *Defendant*.
---------------------------------X

**MATSUMOTO, United States District Judge:**

          Pursuant to 42 U.S.C. § 405(g), Maribel Antonetti

("plaintiff") appeals the final decision of the Commissioner of

Social Security ("defendant" or "Commissioner"), which found

that plaintiff was not eligible for supplemental security income

benefits under Title XVI of the Social Security Act ("the Act"),

on the basis that plaintiff is not disabled within the meaning

of the Act.  Plaintiff alleges that she is disabled under the

Act and is thus entitled to receive the aforementioned benefits.

          Presently before the court are plaintiff's motion for

judgment on the pleadings and defendant's cross-motion for

judgment on the pleadings.  For the reasons stated below,

defendant's motion is DENIED, plaintiff's motion is GRANTED, and

the case is remanded for further proceedings consistent with

this Memorandum and Order.

**BACKGROUND**

## I.   Procedural History

On September 27, 2013, plaintiff Maribel Antonetti filed an application for disability insurance benefits as well as an application for supplemental security income benefits. (ECF No. 17, Administrative Transcript ("Tr.") 247-50, 251-57.) The alleged onset of her disability was January 2, 2012.  (*Id.*)[1]

At a date undetermined by the record, the SSA denied the plaintiff's application for social security disability insurance benefits on the basis that she had not worked long enough to qualify for benefits under Title II of the Act.  (Tr. 262.)  On November 21, 2013, the SSA denied the plaintiff's application for supplemental security income on the grounds that she was not disabled within the meaning of the Act.  (*Id.* 112-17.)  On December 10, 2013, the plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* 120-22.) On July 31, 2015, plaintiff appeared and testified before ALJ Marissa Pizzutto.  (*Id.* 46-59.)  By a decision dated January 14, 2016, ALJ Pizzutto determined that plaintiff was not disabled within the meaning of the Act and, therefore, was not entitled to benefits.  (*Id.* 91-106.)

---

[1]    The complaint refers to January 20, 2008 as plaintiff's disability onset date (ECF No. 1, Complaint ("Compl.") 1), but the record as a whole belies this assertion.

On January 19, 2016, plaintiff appealed the ALJ's decision to the Appeals Council.  (Tr. 168-72.)  On January 27, 2017, the Appeals Council remanded the case and directed the ALJ to call a vocational expert to testify at the hearing.  (*Id.* 107-11.)  Because the plaintiff had moved during the pendency of his appeal, the case was remanded to a different hearing office and, consequently, a different ALJ.  (*Id.*)  On January 1, 2018, the plaintiff appeared for a hearing before ALJ Jay Cohen.  (*Id.* 60-82.)  On March 1, 2018, ALJ Cohen determined, as did ALJ Pizzutto, that the plaintiff was not disabled within the meaning of the Act and, therefore, was not entitled to benefits.  (*Id.* 12-31.)  On March 7, 2018, plaintiff appealed ALJ Cohen's decision to the Appeals Council.  (*Id.* 243-46.)  On January 9, 2019, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (*Id.* 1-6.)  On March 11, 2019, plaintiff filed the instant action in federal court. (*See generally* Compl.)

## II.   Medical and Non-Medical Evidence

The parties in this matter filed a Joint Stipulation of Relevant Facts ("Stip.") on October 25, 2019.  (ECF No. 16-1.) The court hereby incorporates the facts contained therein by reference, and further addresses only the evidence relevant to the disposition of the instant motions.

### A. Treating Psychiatrist Faisal Chaudhry, MD

On January 4, 2018, Faisal Chaudhry, MD, a psychiatrist on staff at Woodhull Medical Center, completed a Psychiatric/Psychological Impairment Questionnaire for plaintiff. (Tr. 871-75.) Dr. Chaudhry stated that he first treated the plaintiff on July 13, 2015, and saw plaintiff monthly thereafter until November 9, 2017. (*Id.* 871.) Dr. Chaudhry diagnosed plaintiff with major depressive disorder and noted the following clinical signs and symptoms: depressed mood, hostility or irritability, illogical thinking, past suicide attempts and suicidal ideation, difficulty thinking or concentrating, anhedonia/pervasive loss of interest, decreased energy, psychomotor retardation, social withdrawal or isolation, visual hallucinations of shadows, and sleep disturbances. (*Id.* 872.) Dr. Chaudhry opined that the plaintiff was not a malingerer. (*Id.* 871.) Dr. Chaudhry also stated that plaintiff's most frequent symptoms were hostility and irritability and that plaintiff had difficulty controlling her anger and, moreover, that her anger would worsen due to her physical impairments, including loss of balance and sharp pain. (*Id.* 873.) Dr. Chaudhry stated that plaintiff's symptoms date back as far as July 13, 2015, the date he was first treated by Dr. Chaudhry. (*Id.* 875.)

Dr. Chaudhry opined that plaintiff was markedly limited in: her ability to carry out detailed instructions; perform activities within a schedule and be punctual; sustain an ordinary routine without supervision; complete a workday without interference from psychological symptoms; perform at a consistent pace without unreasonable rest periods; and accept instruction and respond appropriately to criticism from supervisors. (Tr. 874.) Dr. Chaudhry further opined that plaintiff would have a moderate to marked limitation in her ability to remember locations and work procedures; understand and remember detailed instructions; carry out simple one- to two-step instructions; maintain attention and concentration for extended periods; maintain socially appropriate behavior; adhere to basic standards of neatness; and travel to unfamiliar places or use public transportation. (*Id.*) Dr. Chaudhry also stated that plaintiff had, at most, mild limitations with respect to: her ability to work in coordination with, or close proximity to others, without being distracted by them; interact appropriately with the public; and ask simple questions or request assistance. (*Id.*) He opined that, on average, plaintiff would miss work more than three times a month due to her impairments. (*Id.* 875.)

### B. Medical Opinion of Consultative Examiner Johanina McCormick, PhD

On November 6, 2013, the plaintiff was examined by Johanina McCormick, PhD, at the request of the Administration. (Tr. 522-26.) Dr. McCormick found that plaintiff's demeanor and responsiveness were adequate. (*Id.* 523.) She further found that plaintiff's motor behavior was normal; her eye contact was appropriate; her expressive language was adequate; her affect was dysphoric; and her mood was dysthymic. (*Id.*) Dr. McCormick assessed that plaintiff was oriented, had full affect and no signs of delusions or paranoia, and that her mood was "neutral." (*Id.* 332.) Dr. McCormick noted that, with respect to plaintiff's cognitive state, her attention, concentration, and memory skills were mildly impaired due to discomfort and depression, her intellectual functioning appeared to be below average, and her insight and judgment were both "fair." (*Id.* 524.)

Dr. McCormick did acknowledge, however, that plaintiff can dress, bathe, and groom herself but needed help with cooking, cleaning, and laundry. (Tr. 524.) Plaintiff's husband assisted her with cooking, cleaning, and laundry, and plaintiff did not drive but could take public transportation. (*Id.*) Plaintiff also reported to Dr. McCormick that she did not socialize. (*Id.*) Dr. McCormick opined that the plaintiff could

follow and understand simple directions and perform simple
tasks; that she is mildly impaired in maintaining attention and
concentration; would "need help" to maintain a schedule, or
learn new tasks; is mildly impaired in performing complex tasks
and needs supervision; is able to make appropriate decisions; is
mildly impaired in relating to others; and is mildly impaired in
dealing with stress.  (*Id.* 524-525.)  Dr. McCormick recommended
that the plaintiff continue with treatment, and stated that the
plaintiff's prognosis was "fair, given treatment compliance and
the support of her immediate family."  (*Id.* 525.)

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under
the Act may bring an action in federal district court seeking
judicial review of the Commissioner's denial of their benefits
"within sixty days after the mailing . . . of notice of such
decision or within such further time as the Commissioner of
Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A
district court, reviewing the final determination of the
Commissioner, must determine whether the correct legal standards
were applied and whether substantial evidence supports the
decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.
1998).

A district court may set aside the Commissioner's
decision only if the factual findings are not supported by

substantial evidence or if the decision is based on legal error. *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is 'more than a mere scintilla,'" and must be relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant is disabled under the Act when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months."  42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d
126, 131–32 (2d Cir. 2000).  The impairment must be of "such
severity" that the claimant is unable to do her previous work or
engage in any other kind of substantial gainful work.  42 U.S.C.
§ 423(d)(2)(A).  "The Commissioner must consider the following
in determining a claimant's entitlement to benefits: '(1) the
objective medical facts [and clinical findings]; (2) diagnoses
or medical opinions based on such facts; (3) subjective evidence
of pain or disability . . . ; and (4) the claimant's educational
background, age, and work experience.'" *Balodis v. Leavitt*, 704
F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*,
174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the
Commissioner, a five-step sequential evaluation process is used
to determine whether the claimant's condition meets the Act's
definition of disability.  *See* 20 C.F.R. § 404.1520.  This
process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant
> is not working, (2) that he has a 'severe impairment,'
> (3) that the impairment is not one [listed in Appendix
> 1 of the regulations] that conclusively requires a
> determination of disability, and (4) that the claimant
> is not capable of continuing in his prior type of
> work, the Commissioner must find him disabled if (5)
> there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted)); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2). In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128. In step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard."  *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)) (internal quotation marks omitted).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts*, 94 F.3d at 39.  However, if the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits.  *See, e.g.*, *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

<u>**DISCUSSION**</u>

I.  **The ALJ's Disability Determination**

Using the five-step sequential process to determine whether a claimant is disabled as mandated by 20 C.F.R. § 416.971, the ALJ determined at step one that the plaintiff had not engaged in substantial gainful activity since the application date of August 5, 2013.  (Tr. 18.)  At step two, the ALJ found that the plaintiff suffered from the severe impairments of osteoarthritis of the knees and hips, bilateral

11

carpal tunnel syndrome, obesity, asthma, diabetes mellitus, and depression.  (*Id.*)  Additionally, the ALJ found that the plaintiff suffered from the following non-severe impairment: cocaine abuse in sustained remission.  (*Id.*)

At step three, the ALJ determined that from August 5, 2013, through the date of the hearing, the plaintiff did not have an impairment or combination that meets or medically equals one of the listed impairments in Appendix 1 of the regulations, 20 C.F.R. § 404.1520, Appendix 1 (20 C.F.R. §§ 416.920(d) and 416.926), although the ALJ considered Listing 1.04, as well as Listings 3.03, 9.00, 14.09, and 12.04.  (Tr. 18-20.)  The ALJ found that from August 19, 2013, through the date of the hearing, the plaintiff would be capable of performing sedentary work with exceptions that the claimant can sit for one hour at a time for a total of six hours; can stand or walk for thirty minutes at a time for a total of two hours; can frequently use her hands for fine and gross manipulation to accommodate her carpal tunnel syndrome; must avoid exposure to respiratory irritants and extremes of heat and cold; and is limited to performing simple routine tasks and repetitive work.  (*Id.* 20.)

At step four, the ALJ concluded that plaintiff had no past relevant work experience.  (Tr. 24.)  At step five, the ALJ found that plaintiff was capable of performing work that was available in the national economy from August 5, 2013, through

the date of the hearing.  (*Id.* 24-25.)  Thus, the ALJ concluded
that plaintiff was not disabled within the meaning of the Act,
as defined in 20 C.F.R. § 416.920(g).  (*Id.* 25-26.)

## II.  Analysis

In the main, plaintiff asserts the ALJ erred by not
properly weighing the medical evidence, and by failing to
develop the record.  The court agrees.

### A. The ALJ Failed to Develop the Record Regarding the Treating Physician's Opinion

The ALJ found that Dr. Chaudhry's opinions were
entitled to less-than-controlling weight, stating that the
opinion was inconsistent with treatment notes.  According to the
ALJ, "[w]hile Dr. Chaudhry reported that the results are
consistent with the mental status examinations he administered
over the years he did not provide the results of those
examinations and his statements are conclusory and without
corroboration".  (Tr. 23.)  Indeed, it appears that Dr.
Chaudhry's treatment notes are not contained in the record.  Dr.
Chaudhry treated the plaintiff at Woodhull Medical Center and
noted that he began treating the plaintiff on July 13, 2015.
(*Id.* 875.)  The medical records from Woodhull Medical include
one initial psychiatric evaluation performed by Dr. Chaudhry on
July 13, 2015, thus substantiating Dr. Chaudhry's statement
regarding the commencement date for plaintiff's treatment.  (*Id.*

557-60.)   Additional treatment notes from Woodhull Medical
Center for the period November 10, 2010 through July 13, 2015
are contained in the record.  (*Id.* 561-671.)  Noticeably absent,
however, are any records from Woodhull Medical Center subsequent
to July 13, 2015.  Nor is there any indication in the record
that the ALJ requested those records, or asked the plaintiff's
attorney to request them.

       According to the SSA regulations, the Commissioner
must "make every reasonable effort" to assist the claimant in
developing a "complete medical history."  20 C.F.R. §
404.1512(b)(1)(i-ii).  Furthermore, "[i]t is the rule in our
circuit that the ALJ, unlike a judge in a trial, must [her]self
affirmatively develop the record in light of the essentially
non-adversarial nature of a benefits proceeding. This duty ...
exists even when, as here, the claimant is represented by
counsel."  *Pratts*, 94 F.3d at 38 (internal citations and
quotations omitted, brackets in original).  Thus, if the
claimant's medical record is inadequate, it is "the ALJ's duty
to seek additional information from the [treating physician] *sua
sponte.*"  *Schaal,* 134 F.3d at 505; *see Rosa,* 168 F.3d at 79
("[A]n ALJ cannot reject a treating physician's diagnosis
without first attempting to fill any clear gaps in the
administrative record.").

The ALJ either knew, or should have known of the existence of additional treatment notes absent from the record, based on Dr. Chaudhry's statement that he had seen the plaintiff on a monthly basis for a period of two years, and that his opinions were supported by his treatment notes.  (Tr. 871-75.) This is further corroborated by the record itself, which includes a note from Dr. Chaudhry reflecting the date his treatment of plaintiff commenced.  (*Id.* 557-60.)

The ALJ's failure to obtain the underlying treatment records likewise calls into question the weight he assigned to Dr. Chaudhry's opinion.  Needless to say, an ALJ cannot assess the amount of medical evidence supporting a treating physician's opinion on an incomplete record. "The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel."  *Shaw,* 221 F.3d at 131.  Thus, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Burgess,* 537 F.3d at 129 (quoting *Rosa,* 168 F.3d at 79). "[W]here . . . an ALJ concludes that the opinions or reports rendered by a claimant's treating physicians lack objective clinical findings, she may not reject the opinion as unsupported by objective medical evidence without taking affirmative steps to develop the record in this regard."  *Rivas v. Barnhart,* No.

01 Civ. 3672 (RWS), 2005 WL 183139, at *23 (S.D.N.Y. Jan. 27, 2005).  "Moreover, an ALJ's affirmative obligation to develop the record also includes the obligation to contact a claimant's treating physicians and obtain their opinions regarding the claimant's residual functional capacity."  *Tirrell v. Berryhill*, No. 15-CV-518 (KAM), 2018 WL 2048879, at *17 (E.D.N.Y. May 1, 2018) (citations, brackets, and internal quotation marks omitted).  Accordingly, the court cannot find that the ALJ has properly weighed Dr. Chaudhry's opinion.

Nor is the ALJ's failure to develop the record somehow excused, as the Commissioner avers, by the fact that plaintiff was represented by counsel and had time to submit medical records.  (ECF No. 15, Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings ("Def.'s Mot.") 9.)  The Second Circuit has made clear that the ALJ's duty to develop the record is unyielding, regardless of whether the claimant proceeds *pro se* or with counsel.  *See Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996) ("[T]he ALJ generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel.") (internal citations omitted); *Barbour v. Astrue*, 950 F. Supp. 2d 480, 489 (E.D.N.Y. 2013) ("In a SSA proceeding, the ALJ generally has an affirmative obligation to develop the

16

administrative record, even when a plaintiff is represented by
counsel.") (internal quotation omitted.)

The Commissioner nevertheless raises three contentions
to support the ALJ's assignment of less-than-controlling weight
to Dr. Chaudhry's opinion.  (Def.'s Mot. 5-10.)  As the court
explains below, the reasoning on which the Commissioner relies
is flawed, and ultimately, unavailing.  The Commissioner first
asserts that the ALJ relied on evidence that purportedly
contradicted Dr. Chaudhry's assessment, and relies on well-
established precedent that the opinion of treating physicians
like Dr. Chaudhry need not be given controlling weight when
"they are contradicted by other substantial evidence in the
record."  (Def.'s Mot. 6 (quoting *Veino v. Barnhart*, 312 F.3d
578, 588 (2d Cir. 2002)).   The Commissioner next contends that,
although the ALJ failed to supplement the record with Dr.
Chaudhry's missing treatment notes, further development of the
record was unnecessary because the record before the ALJ was
already "adequate . . . to make a determination as to
disability." (*Id.* 8 (quoting *Perez v. Chater*, 77 F.3d 41, 48
(2d Cir. 1996)).  Finally, the Commissioner maintains that, even
if Dr. McCormick lacked the requisite medical history for
plaintiff in order to reach a substantive conclusion, a
consulting examiner does not need *all* medical notes to render an
opinion.  (*Id.* 9-10.)

The Commissioner's first contention, that there was evidence on record contradicting Dr. Chaudhry's findings, ignores the timing of Dr. Chaudhry's treatment of plaintiff relative to other doctors.  Plaintiff was treated by various doctors at the Community Healthcare Network from the alleged onset of her disability until July 2015.  (Stip. 4-6.)  From July 2015 on, however, Dr. Chaudhry treated plaintiff regularly at the Woodhull Medical Center.  (*Id.* 6.)  A person is disabled if they are "unable to engage in any substantial gainful activity" due to medical reasons "for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Well over twelve months elapsed between July 2015, when Dr. Chaudhry assumed the role of plaintiff's treating psychiatrist, and March 1, 2018, when the ALJ rendered his decision.  Simply accepting, without further inquiry, that plaintiff's pre-2015 medical history undermines Dr. Chaudhry's opinion based on subsequent medical developments, ignores the real possibility that plaintiff's condition deteriorated substantially after 2015.  (*See* Tr. 21-23.)  In the absence of Dr. Chaudhry's complete treatment notes, and the detailed treatment notes from the Community Healthcare Network, all of which pre-dated Dr. Chaudhry's treatment of plaintiff, ALJ lacked "good reasons" for discounting Dr. Chaudhry's opinion.  20 C.F.R. § 404.1527(c)(2); *id.* § 416.927(c)(2).

The Commissioner's second argument, that the undisputed record provided a sufficient basis for ALJ Cohen's decision, has little merit.  The Commissioner fails to credibly assert that an ALJ can make a full assessment of mental disability without the examination notes of the treating psychologist who saw the plaintiff on a monthly basis for nearly three years.  It is well-established that, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Cook v. Apfel*, 1 F. App'x 13, 15 (2d Cir. 2001) (quoting *Rosa*, 168 F.3d at 79).  Here, the ALJ neither had, nor endeavored to procure, the very examination records and treatment notes that may have corroborated Dr. Chaudhry's assessments.  It is no wonder then, that the ALJ found Dr. Chaudhry's statements to be "conclusory and without corroboration." (*See* Tr. 23.)  "[I]nstead of rejecting the opinion of a specialist who treated [the plaintiff] the ALJ should have sought clarification." *Nuzzo v. Colvin,* 12-CV-2373 FB, 2013 WL 2626873, at *2 (E.D.N.Y. June 11, 2013).

As to the Commissioner's final point, although the court agrees that Dr. McCormick's opinion is not rendered invalid *per se* solely because it was based on an incomplete body of plaintiff's medical records (Def.'s Mot. 9-10), the court cannot conclude that her opinion constitutes "substantial

evidence" to deprive Dr. Chaudhry's opinion of less-than-controlling weight.  As discussed above, there is a significant gap in Dr. Chaudhry's treatment records for plaintiff, which the ALJ did not attempt to bridge.  Dr. McCormick's opinion was based on an assessment of plaintiff's condition more than a year-and-a-half before Dr. Chaudhry first treated her.  Without these missing records, the ALJ lacked a reasonably articulable basis to conclude that Dr. McCormick's opinion *contradicted* that of plaintiff's treating physician, as opposed to reflecting plaintiff's condition before a period of deterioration that left her unable to work.

At bottom, it was error for the ALJ to assign less-than-controlling weight to Dr. Chaudhry's opinion without seeking the full record of his underlying treatment notes.  The court, therefore, remands this case with the instruction that the ALJ fully develop the record, and reconsider the weight afforded to Dr. Chaudhry's opinion in light of any supplemental evidence.

### B. The ALJ Must Evaluate Plaintiff's Testimony in Light of the Fully-Developed Record

The plaintiff also contends that the ALJ inappropriately dismissed her testimony regarding the severity and persistence of her condition. (ECF No. 13, Plaintiff's Memorandum of Law in Support of Her Motion for Judgment on the

Pleadings ("Pl.'s Mot.") 6-8; Tr. 21.)  The ALJ stated that
plaintiff's "medically determinable impairments could reasonably
be expected to cause the alleged symptoms" but found her
statements concerning the intensity, persistence, and limiting
effects of her symptoms "not entirely consistent with the
medical evidence and other evidence in the record . . . ."  (Tr.
21.)

Complete consistency between the medical evidence and
a claimant's description of symptoms, however, is not the
relevant standard.  To evaluate a claimant's testimony regarding
the intensity and persistence of her symptoms, the ALJ must
first decide whether the claimant suffers from a medically
determinable impairment that could reasonably be expected to
produce the symptoms alleged. *Bayles v. Colvin*, No. 1:15-CV-
01013(MAT), 2018 WL 822221, at *5 (W.D.N.Y. Feb. 13, 2018)
(citing 20 C.F.R. §§ 404.1529(b), 416.929(b)); *see also* Titles
II & XVI: Evaluation of Symptoms in Disability Claims: Assessing
the Credibility of an Individual's Statements, SSR 96-7P, 1996
WL 374186, at *2 (S.S.A. July 2, 1996).  If so, the ALJ next
must consider "the extent to which [the claimant's] symptoms can
reasonably be accepted as consistent with the objective medical
evidence and other evidence" of record.  20 C.F.R. §§
404.1529(b), 416.929(b)).  If the claimant's "pain contentions
are not substantiated by the objective medical evidence," the

21

ALJ must assess the claimant's credibility. *Meadors v. Astrue*, 370 F. App'x 179, 183–84 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *Taylor v. Barnhart*, 83 F. App'x 347, 350–51 (2d Cir. 2003)). "In explaining the credibility assessment . . . an ALJ's opinion 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Tornatore v. Barnhart*, 05-CV-6858, 2006 WL 3714649, at *5 (S.D.N.Y. Dec. 12, 2006); *see also Wright v. Astrue*, No. 06-CV-6014, 2008 WL 620733, at *3 (E.D.N.Y. March 5, 2008).

In light of the deficiencies in the record, the ALJ is instructed to re-evaluate the plaintiff's testimony in light of a fully-developed record, and the objective medical evidence presented by Dr. Chaudhry's treatment notes.

## CONCLUSION

For the reasons set forth above, the court grants plaintiff's motion for judgment on the pleadings; denies defendant's cross-motion for judgment on the pleadings; and remands this case for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to close this case and enter judgment in favor of plaintiff.

**SO ORDERED.**

Dated:     Brooklyn, New York
           July 11, 2020

                                    _____
                                           /s/
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge